NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

_____

PAIGE S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY,[1] G.B., *Appellees*.

No. 1 CA-JV 14-0200
FILED 12-23-2014

_____

Appeal from the Superior Court in Maricopa County
No.  JD 510976
The Honorable Brian K. Ishikawa, Judge

**AFFIRMED**

_____

COUNSEL

The Stavris Law Firm, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellees Arizona Department of Child Safety*

_____

[1]      Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Arizona Department of Child Safety is substituted for the Arizona Department of Economic Security in this matter.  *See* ARCAP 27.

---

## MEMORANDUM DECISION

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Andrew W. Gould and Judge Samuel A. Thumma joined.

---

D O W N I E, Judge:

¶1          Paige S. ("Mother") appeals from an order terminating her parental rights.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2          G.B. was born in May 2011.  Mother, Father, and G.B. lived in Colorado until approximately February 2012, when they briefly resided with Father's parents in Arizona.[2]  Mother returned to Colorado after roughly one month, and Father moved back to Colorado in May 2012. The parties then alternated custody of G.B. until January 2013, when Mother relocated to Texas and left G.B. with Father.  In February 2013, Father and G.B. returned to Arizona to live with Father's parents ("Grandparents").

¶3          In April 2013, paternal grandmother filed a dependency petition, alleging that Father could not properly care for G.B. and that Mother had abandoned G.B.  Mother learned of the dependency petition in May 2013 and moved from Texas back to Colorado.  DCS substituted for paternal grandmother as petitioner, and G.B. was found dependent as to Mother in August 2013.

¶4          In October 2013, G.B.'s guardian ad litem ("GAL") filed a motion to terminate Mother's parental rights, alleging Mother had a history of substance abuse and that G.B. had been in out-of-home care for more than six months.  The motion was amended in December 2013 to add abandonment as an additional ground for termination.  *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(1).

¶5          On the first day of the severance trial, the GAL withdrew all of the grounds alleged for termination except abandonment.  After

---

[2]     Father's parental rights were terminated in a separate proceeding. He is not a party to this appeal.

hearing the evidence, the juvenile court found that Mother had abandoned G.B. and that severance was in G.B.'s best interests. Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

**¶6**        As applicable here, to justify termination of parental rights, the juvenile court must find at least one of the statutory factors enumerated in A.R.S. § 8-533(B) by clear and convincing evidence. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000). The court must also find, by a preponderance of the evidence, that severance is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, 110 P.3d 1013, 1022 (2005).

### I.    Abandonment

**¶7**        Abandonment is defined as "the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision" and "includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child." A.R.S. § 8-531(1). "What constitutes reasonable support, regular contact, and normal supervision varies from case to case." *Pima Cnty. Juvenile Action No. S-114487*, 179 Ariz. 86, 96, 876 P.2d 1121, 1131 (1994). "[A]bandonment is measured not by a parent's subjective intent, but by the parent's conduct: the statute asks whether a parent has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship." *Michael J.*, 196 Ariz. at 249-50, ¶ 18, 995 P.2d at 685-86.

**¶8**        The juvenile court found Mother had four in-person visits and 29 telephone conversations with G.B. between February 2013 and the severance trial in May 2014. The court further found Mother provided only $204 in support to G.B. during that time period, along with "minimal gifts." The court ruled Mother had abandoned G.B. by failing to maintain a normal parental relationship without just cause for more than six months.

**¶9**        Mother does not dispute the juvenile court's findings, but argues instead the findings did not support termination. She argues her actions were reasonable given her circumstances. In essence, Mother asks this Court to reweigh the evidence. However, "[t]he juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh

3

the evidence." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶4, 53 P.3d 203, 205 (App. 2002). "On review . . . we will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Id.*

**¶10**　　　　Sufficient evidence supports the termination order. Mother went months at a time without seeing G.B. Her telephone calls were characterized as brief and infrequent. Mother testified her visits were sporadic because her ability to leave Colorado was restricted after September 2013 due to a felony charge, requiring her to obtain permission to travel. Mother conceded, though, that she never sought permission to visit G.B. on occasions other than scheduled court dates and that she may have been able to visit at other times. Mother agreed she could have done more to support and maintain contact with G.B. She also acknowledged that given G.B.'s young age, the best way to maintain a relationship with her was to "see her face to face."

**¶11**　　　　Based on the evidence, the juvenile court could reasonably conclude that Mother made only minimal efforts to maintain a parent-child relationship with G.B. *See Michael J.*, 196 Ariz. at 251, ¶ 25, 995 P.2d at 687 ("The burden to act as a parent rests with the parent, who should assert [her] legal rights at the first and every opportunity."). The court did not abuse its discretion in finding the statutory ground of abandonment by clear and convincing evidence.

## II.　　Best Interests

**¶12**　　　　In making its best interest determination, the juvenile court must "include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cnty. Juvenile Action No. JS-500274*, 167 Ariz. 1, 5, 804 P.2d 730, 734 (1990). Factors that weigh in favor of severance include the immediate availability of an adoptive placement and whether an existing placement is meeting the child's needs. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App. 1998).

**¶13**　　　　Mother argues the court erred in its best interest ruling, emphasizing steps she took to improve herself and her parenting skills after the dependency proceedings began. However, "the best interests inquiry focuses primarily upon the interests of the child, as distinct from those of the parent." *Kent K.*, 210 Ariz. at 287, ¶ 37, 110 P.3d at 1021.

¶14	The juvenile court found severance was in G.B.'s best interests because it would allow her "to gain permanency through adoption" by Grandparents, who are committed to adopting her, and who provide for all of her physical, emotional, educational, medical, and social needs. Evidence in the record supports these findings and establishes that G.B. is bonded with Grandparents. Additionally, G.B.'s therapist testified it would be "traumatic" for G.B. to be removed from Grandparents' care, where she is doing "really well." Substantial evidence supports the juvenile court's finding that termination of Mother's parental rights is in G.B.'s best interests.

**CONCLUSION**

¶15	For the foregoing reasons, we affirm the order terminating Mother's parental rights.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama